```
                    UNITED STATES DISTRICT COURT
                    MIDDLE DISTRICT OF FLORIDA
                       FORT MYERS DIVISION
```

CMR CONSTRUCTION & ROOFING

       Plaintiff,

v.                       Case No:  2:20-cv-422-FTM-29MRM

THE  ORCHARDS  CONDOMINIUM
ASSOCIATION, INC.,

       Defendant.

_____

THE ORCHARDS CONDOMINIUM
ASSOCIATION, INC.,

       Plaintiff,

v.                       Case No:  2:20-cv-564-FTM-29MRM

EMPIRE  INDEMNITY  INSURANCE
COMPANY and CMR CONSTRUCTION &
ROOFING LLC,

       Defendants.

_____

CMR CONSTRUCTION & ROOFING,
LLC,  a/a/o  The  Orchards
Condominium     Association,
Inc.,

       Plaintiff,

v.                       Case No:  2:20-cv-917-FTM-29MRM

EMPIRE  INDEMNITY  INSURANCE
COMPANY,

       Defendant.

_____

## OPINION AND ORDER

This matter comes before the Court on review of cross-motions for summary judgment and partial summary judgment addressing the validity and enforceability of an assignment of benefits. (Docs. ##157, 159, 168.)  Each party filed a Response in Opposition (Docs. ##171, 172, 173, 174) and Replies (Docs. ##175, 176, 177, 178.) With permission from the Court (Doc. #193), a Joint Sur-Reply (Doc. #194) was filed.  Collectively, these documents contain over 8,800 pages of attached exhibits.  The Court heard oral arguments on January 11, 2024.  The Motions are resolved as set forth below.

### I.   Findings of Fact and Procedural History

"On September 10, 2017, Hurricane Irma struck Naples[, Florida]."  Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co., 84 F.4th 1241, 1246 (11th Cir. 2023).  At the time, The Orchards Condominium Association, Inc. (The Orchards) had a commercial property surplus lines insurance policy (the Policy)[1] issued by Empire Indemnity Insurance Company (Empire) for the policy period April 6, 2017 to April 6, 2018 (Doc. #53-1, p. 8) covering certain property damage to its thirty buildings caused by Hurricane Irma. The Orchards reported the damage to Empire, hired a contractor to perform the roof and gutter work, and executed an assignment of insurance benefits in favor of that

---

[1] Policy Number ECL9489904.

contractor. Things did not go well, however, resulting in five lawsuits, three of which are pending in this consolidated action.

The Court and the parties "agreed that the validity and enforceability of the AOB should be addressed in the first instance since that determination impacts whether CMR or Orchards is the proper party to proceed with respect to claims against Empire." (Doc. #149, p. 2.) "Consideration of the remaining portions of each case [was] deferred until" the validity and enforceability of the AOB was resolved. (Id. at p. 3.)

**A. Initial Post-Hurricane Activity**

The Orchards is a Florida condominium association governed by an Amended and Restated Declaration of Condominium (Doc. #16-7) (the Declaration) and a set of By-Laws. After Hurricane Irma struck, The Orchards filed its claim with Empire and set about obtaining a contractor to address significant roof and gutter damage. In due course they began discussions with CMR Construction and Roofing, LLC (CMR) and at least two other roofing contractors. Before the benefit of a written contract, CMR began performing what the parties refer to as "temporary repairs," such as tarping the roofs and addressing leaks as they occurred.

Meanwhile, The Orchards and Empire were discussing the extent of the damages covered by the Policy. Empire determined all buildings suffered damages totaling $332,692.10 in Replacement Cost Value (RCV). Because of applicable deductibles and Policy

3

limits for each building, only two buildings were deemed eligible for payment.  On February 8, 2018, Empire notified The Orchards by email that payment would be sent under separate cover for $96,763.53 for the damage done to those two buildings.  (Case No. 2:18-cv-779, Doc. #27-3.)  It appears that Empire issued the check payable to The Orchards.  (See Doc #159-8, p. 8.)

**B. The Contract Documents**

At an April 11, 2018 meeting, the Board of Directors of The Orchards (the Board) unanimously approved hiring CMR as its roofing contractor to make the Hurricane Irma repairs.  The resulting contract documents included a roofing agreement, an assignment of benefits, and an addendum to those documents. All three documents were approved by the Board, executed by The Orchards' then-president Mark Johnson (Johnson), and had been reviewed by The Orchards' legal counsel at some point in time.

**(1)  Roofing Agreement**

A document captioned "Agreement" on CMR letterhead was executed on or about April 12, 2018. (Doc. #53-3) (the Roofing Agreement.)  This Roofing Agreement contains the "specifications" for roof and gutter work to be done at The Orchards, but all the specifications are marked as 'TBD'.  The spaces next to whether the roof would be torn off and the gutters removed and replaced are blank. Nothing appears next to the brand of shingles to be installed, their style, color, or year.  The 'Agreement Amount'

4

and the 'Final Agreement Amount' are also listed as 'TBD.'  Only the warranty section is completed, showing that a ten-year workmanship warranty was included.  A clause headed "Subject to Insurance Approval" states:

> Terms for Insurance Work Only: This agreement does not obligate the Property Owner or CMR unless it is approved by your Insurance Company and accepted by CMR. By signing the Agreement, you authorize CMR to pursue your best interests at a price agreeable to your Insurance Company and CMR, without any cost to you except for your insurance deductible for the work scope approved by your Insurance Company, provided you have full replacement cost coverage. Supplemental claims billed by CMR on your behalf and approved by your Insurance Company for additional work or cost increases will become part of this agreement. Any upgrades or additional work requested by you and not approved by your Insurance Company will be your financial responsibility. By signing this Agreement, Property Owner acknowledges CMR Construction & Roofing as a General Contractor and as such will be entitled to 10% Overhead & 10% Profit as allowed by Insurance Industry standards.

(Id. at p. 1.)  Both sides signed the Agreement.

**(2)  Contract for Services, Assignment of Benefits**

Also on or about April 12, 2018, CMR and The Orchards executed a document drafted by CMR captioned "CONTRACT FOR SERVICES, ASSIGNMENT OF BENEFITS".  The full document reads as follows:

**CONTRACT FOR SERVICES, ASSIGNMENT OF BENEFITS**

This Assignment of Claim for Damages ("the Assignment") is made effective 4/12/2018

**BETWEEN:** The Orchards Condominium Association, Inc. ('The Assignor"), the insured and existing under the laws of the State of Florida, located at: 7852 Gardner Drive, Naples FL 34109

**AND:** CMR CONSTRUCTION & ROOFING, LLC (the "Assignee"), a corporation organized and existing under the Laws of the State of Florida, with its office located at: 170 25th Ave NW Naples, FL 34120

**Agreement:**
I, the Owner/Agent and Assignor for the property listed above, authorize to Assignee to enter my property, furnish materials, supply all equipment and perform all labor necessary to preserve and protect my property from further damage and perform the following work:

☐     Emergency Roof Leak Mitigation/Cleanup
☒     Roofing & Gutters
☐     Re-screening of Pool Enclosures

**Assignment of Insurance Benefits:**
Assignor hereby assigns any and all insurance rights, benefits, and proceeds under any applicable insurance policies to CMR Construction & Roofing, LLC. I make this assignment and authorization in consideration of CMR's agreement to perform services and supply materials and otherwise perform its obligations under this contract, including not requiring full payment at the time of service. I also hereby direct my insurance carrier(s) to release any and all information requested by CMR, its representatives(s), or its attorney to the direct purpose of obtaining actual benefits to be paid by my insurance carrier(s) for services rendered or to be rendered. In this regard, I waive my privacy rights. I agree that any portion of work, deductibles, betterment, depreciation or additional work requested by the undersigned, not covered by insurance, must be paid by the undersigned on or before its completion. I hereby appoint CMR as attorney in-fact, authorizing CMR to endorse my name, and to deposit insurance checks or drafts for CMR. Payment terms to CMR are net-10 days.

> Late charges of 1.5% monthly are charged to any and all
> unpaid balances. CMR shall be entitled to reimbursement
> for costs of collection (including reasonable attorney's
> fees and costs) of unpaid amount by Owner/Agent and for
> reasonable attorney's fees and costs for the breach, or
> enforcement, or any terms of this entire service
> agreement.

(Doc. #53-2.)  The Court will follow the lead of the parties and refer to this document as the AOB.  According to CMR, the AOB is structured so that CMR was to perform the work after the scope of work is approved by Empire. (Doc. #171, p. 34.)

### (3)  Contract Addendum

On or before April 30, 2018, a one-page document was prepared by The Orchards and approved by The Orchards legal counsel.  The document has a hand-written title of "Contract Addendum" and a printed table with three columns and thirty-six rows. (Doc. #53-3, p. 2.) The first column lists "Specifications", the second "Yes/No", and the third leaves space for a "Note if different specifications to be substituted." (Id.) For example, one row under the Specifications column reads "[r]emove and replace any and all damaged fascia board," while another row reads "[r]emove, repair or replace aluminum soffits." (Id.) Both are followed by a "Y" under their respective "Yes/No" column, and no notes appear under their respective third column. (Id.) Below the table is the following hand-written language:

> The terms identified above ("Contract Addendum") shall
> modify and be in addition to that certain contract
> between CMR and The Orchards Condominium Association,

Inc., dated: 4/30/2018. If any conflict shall arise
between this contract addendum and the contract, the
terms of the contract addendum control.

(Id.)  The Contract Addendum is undated but signed by both parties.

### C. The Orchards' Authority to Enter AOB

Between July 31 and August 13, 2018, The Orchards' Board

members exchanged a series of emails which focused on § 15.7 of

its governing Declaration.  Section 15.7 provides:

15.7 Insurance Proceeds. All insurance policies
purchased by the Association shall be for the benefit of
the Association, the unit owners and their mortgagees as
their interests may appear, and all proceeds from
policies purchased by the Association shall be payable
only to the Association.

(Doc. #16-7, p. 27.) The Board questioned internally whether this

provision precluded The Orchards' from entering an AOB with CMR

and a separate AOB with another entity, so the Board consulted

with two attorneys in succession regarding this matter.  By mid-

August 2018, both attorneys had told The Orchards that § 15.7 did

not bar The Orchards from agreeing to the AOB with CMR or the other

entity.  The Orchards decided not to discuss the purported

restriction with CMR or the other entity and did not do so.

### D. First Lawsuit

CMR took the lead in attempting to resolve the claim with

Empire, although The Orchards provided frequent contact with and

assistance to CMR.  The Orchards did not do anything to impede

CMR's ability to achieve an agreed-upon scope of work with Empire.

On May 31, 2018, CMR sent Empire a letter stating that "CMR has estimated a roof number $4,953,000."  Case No. 2:18-cv-779, Doc. #48-5, p. 2.)   This letter also stated: "CMR agrees, to complete the job for the approved insurance amount building to code and the Orchard Spec Sheet provided by CMR Constriction [sic] & Roofing." (Id.)  Empire did not accept CMR's estimate but continued to rely on its prior $96,763.53 determination.

On September 18, 2018, CMR (as the assignee of The Orchards) sued Empire in state court for breach of contract, seeking full payment of the RCV from Empire.  This case was removed to federal court, (see CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co., 2:18-cv-00779-JLB-NPM); Doc. #88-1) and is referred to herein as CMR I or the First Lawsuit.  The Orchards learned of this lawsuit within six months of its filing, and thereafter cooperated with CMR, exchanged numerous emails with CMR, and had two representatives attend the mediation session.

On April 1, 2020, Empire obtained summary judgment in its favor.  The district court found that "Empire did not breach the policy in failing to pay the RCV because CMR did not undertake any repairs to which that policy provision applied. Nor did Empire breach the policy in failing to pay [the Actual Cash Value (ACV)] because CMR never requested payment for ACV." (Doc. #88-2.)  CMR filed a Notice of Appeal on April 22, 2020. (CMR Constr. & Roofing,

LLC v. Empire Indem. Ins. Co., Case No. 2:18-cv-00779-JLB-NPM, Doc. #78.)

**E. Post-Summary Judgment Activity**

On April 8, 2020, The Orchards decided to re-open the bids for its roofing and gutters work.  CMR submitted various proposals (Doc. #171-10) including one dated April 9, 2020, in which CMR proposed to remove and replace the roofs and gutters and included the statement:

> **Upon settlement of the Association's claim of damages against its insurer for damages sustained during Hurricane Irma, and per the Assignment of Benefits agreement between CMR and The Orchards dated 4/12/18, the balance of any insurance funds approved for this Scope of Work and completed by CMR will become immediately due.  Any payments made by the Association in excess of the deductible for this Scope of Work will be refunded to the Association by CMR.**

(Id. at p. 3) (bolded in original).

On April 14, 2020, CMR provided Empire with an updated scope of work estimate which included both RCV and ACV. (Doc. #53-4.) CMR and Empire were never able to agree on a scope of work to be performed which would be covered by the Policy.

**F. Termination of Roofing Agreement/Revocation of AOB**

On April 30, 2020, CMR sent an email to The Orchards asking "why you won't return my calls, email or send work orders" despite there being a known roof leak. (Doc. #168-2.) The Orchards' then-President responded on May 1, 2020 that "[a]fter careful

consideration, [The Orchards] has hired a different contractor. . . ." (Id.)

On May 15, 2020, The Orchards signed a contract with Universal Contracting of Florida (UCMS) to perform roof replacements on all of its buildings required by damage caused by Hurricane Irma.  The Orchards reports that this new contract required them to pay for all roofs out of pocket regardless of insurance coverage.[2] (Doc. #172, p. 6, ¶14.)

On May 19, 2020, The Orchards emailed CMR that it had "terminated CMR" and "therefore [CMR had] no authority to negotiate with the insurance company or their counsel related to this case, claim, or any other issue." (Doc. #16-5.)  CMR was also "no longer allowed on the property or to do any further work on the property." (Id.)

On or about May 28, 2020[3], The Orchards (through its attorneys) emailed a letter to CMR's attorneys (with a copy to Empire).  (Doc. #16-6.)  The letter recited that The Orchards "executed an Assignment of Benefits (hereinafter "AOB") assigning

---

[2] The Orchards also reports that on March 11, 2021, the roof replacements passed inspection, and that The Orchards has paid UCMS $2.9 million and owes a balance of $2.1 million.  (Doc. #172, p. 7, ¶16.)

[3] This letter is incorrectly dated May 28, 2019. The error is apparent because the letter refers to the appeal of the district court's summary judgment order, which was filed on April 22, 2020. The correct date is May 28, 2020, as all parties concede.

its rights to insurance proceeds under the above referenced claim number to your client, CMR Construction and Roofing, LLC (hereinafter "CMR"), on or about April 12, 2018. On or about April 30, 2018, our client executed an addendum to the AOB with CMR." (Id.)  The letter continued: "Please allow this letter to serve as official notice that The Orchards hereby REVOKES the AOB, executed April 12, 2018, and addendum to the AOB, executed April 30, 2018, assigning its rights to insurance proceeds under the subject claim to CMR." (Id.)  The letter further advised:

> . . . CMR no longer has the authority to negotiate the insurance proceeds related to the subject loss with The Orchards Insurer, Empire Indemnity Insurance Company (hereinafter "Empire"). Thus, we demand that you CEASE and DESIST all further communications and negotiations with Empire related to The Orchards, the above referenced claim, CMR's breach of contract case against Empire with corresponding United States District Court, Middle District of Florida, Fort Myers Division case number 2:18-779-FtM-TJC-NPM, and pending appeal of the aforementioned court case.

(Id.)  The stated reason for the revocation was that CMR had not finished the work at the property. (Id.)  No reference was made to § 15.7 of the Declaration, and The Orchards representative testified The Orchards was not compelled by the provision to revoke the AOB.

In a June 11, 2020, letter response, CMR's attorney stated in part:

> CMR, in exchange for performing temporary
> repairs, obtained an unqualified and whole
> assignment of benefits for "any and all
> insurance rights, benefits and proceeds."
> Because the Assignment of Benefits was
> provided for good and valuable consideration,
> i.e. nearly one hundred thousand dollars in
> temporary repairs, the Assignment of Benefits
> is irrevocable. CMR is the sole and rightful
> owner of the insurance Claim currently pending
> with Empire, and the named party with standing
> in the pending appeal. Your 'cease and desist'
> email, and May 28, 2020 correspondence, holds
> no weight and is hereby rejected in full. In
> fact, any action, conduct, or communication
> (verbal or written) that The Orchards take
> that has any effect on CMR's ability to settle
> the Claim or pending appeal, will be met with
> swift legal action and all liability will rest
> with The Orchards and its Board.

(Doc. #157-22, pp. 1-2.)

**G. Additional Lawsuits**

Perhaps not surprisingly, while the summary judgment in the First Lawsuit was still pending appeal, four more related lawsuits were filed.

**(1)  CMR v. The Orchards and Mark Johnson**

On June 16, 2020, CMR sued The Orchards and its president Mark Johnson. (See CMR v. The Orchards and Mark Johnson, Case No. 2:20-cv-422-FTM-29MRM.)  CMR's operative pleading (Doc. #16) alleges ten counts against either The Orchards or Johnson (in his individual capacity). The Amended Complaint asserts claims against The Orchards for (1) a declaratory judgment that The Orchards wrongfully revoked the AOB (Count I); (2) a declaratory judgment

that The Orchards wrongfully revoked the Roofing Agreement and the Addendum (Count II); (3) breach of contract (Count III); (4) fraud in the inducement for the AOB (Count IV); (5) fraudulent misrepresentation for the AOB (Count VI); (6) negligent misrepresentation for the AOB (Count VIII); and (7) unjust enrichment (Count X). The claims against Johnson are (8) fraud in the inducement of the AOB (Count V); (9) fraudulent misrepresentation for the AOB (Count VII); and (10) negligent misrepresentation for the AOB (Count IX). The Court denied The Orchard's motion to dismiss (Doc. #30) counts 4, 6, and 8, and both The Orchards and Johnson filed Answers.[4] (Docs. ##32, 77.)

**(2)   The Orchards v. Empire and CMR**

On July 6, 2020, The Orchards sued Empire and CMR in state court, which was removed to federal court. (See The Orchards v. Empire and CMR, Case No. 2:20-cv-564-FTM-29MRM.) The Orchards' operative pleading (Id., Doc. #3) alleges two counts against Empire and CMR. The Complaint seeks a declaratory judgment (Count I) against CMR stating that the AOB was properly revoked, or

---

[4] In their Answer, The Orchards raised a Counterclaim against CMR for negligence. (See Doc. #32, pp. 44–45.) The Court dismissed the Counterclaim. (See Doc. #47.) The Orchards then filed another Counterclaim against CMR, this time under Florida's Deceptive and Unfair Trade Practices Act (FDUTPA) (see Doc. #58), followed by an Amended Counterclaim (see Doc. #65), and a Second Amended Counterclaim for the same claim. (See Doc. #91.) These were stricken (see Doc. #62), dismissed without prejudice (see Doc. #89), and eventually dismissed with prejudice. (See Doc. #103.)

alternatively that the AOB was invalid, or that CMR breached the AOB and thus relieved The Orchards from any further obligations. It also asserts a breach of contract claim against Empire for failing to pay under the Policy pursuant to the updated estimate made by CMR (Count II). Empire and The Orchards filed Answers. (<u>Id.</u>, Docs. ##15, 41.)

> **(3)** <u>**CMR Construction and Roofing, LLC v. UCMS, LLC d/b/a Universal Contracting Florida**</u>

On October 30, 2020, CMR sued UCMS in federal court. (<u>See</u> <u>CMR Const. & Roofing, LLC v. UCMS, LLC d/b/a Universal Contracting Florida</u>, Case No. 2:20-cv-867-JLB-KCD.)  The operative Amended Complaint (<u>id.</u>, <u>Doc. #65</u>) asserted a claim of tortious interference with contract (Count I), tortious interference with advantageous business relationship (Count II), and violation of the Florida Deceptive and Unfair Trade Practices Act (Count III), and additionally sought injunctive relief (Count IV).  On March 15, 2021, the district court dismissed all counts for failing to plausibly plead causes of actions, and thereafter denied two motions for reconsideration.  On July 29, 2022, the Eleventh Circuit Court of Appeals affirmed the dismissal.  <u>CMR Constr. & Roofing, LLC v. UCMS, LLC</u>, 21-11183, <u>2022 WL 3012298</u> (11th Cir. 2022).

**(4)  CMR v. Empire**

On November 19, 2020, CMR sued Empire, again, filing directly in federal court.  (See CMR v. Empire, Case No. 2:20-cv-917-FTM-29MRM.) CMR's operative pleading (Doc. #53) alleges two counts: (1) a breach of contract claim against Empire for not tendering full payment under the Policy after CMR provided a new updated estimate, and (2) a declaratory judgment claim. (Id.) Empire filed an Answer with eleven affirmative defenses. (Doc. #88.)

**H. Affirmance of First Lawsuit Summary Judgment**

On January 26, 2021, the Eleventh Circuit affirmed the summary judgment in favor of Empire.  See CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co., 843 F. App'x 189 (11th Cir. 2021).  The appellate court noted that the Policy provides that a claim for replacement cost value will not be paid "[u]ntil the lost or damaged property is actually repaired or replaced" and "[u]nless the repairs or replacement are made as soon as reasonably possible after the loss or damage." Thus, Empire was not obligated to pay CMR the replacement cost value until CMR had actually made the repairs and incurred the costs of doing so.  Id.

Additional facts may be set forth below as necessary to resolve specific issues.

**II.  Summary Judgment Standards**

The parties filed their present cross-motions for summary judgment solely addressing issues relating to the validity and

enforceability of the AOB.  Summary judgment is proper where the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Edmondson v. Velvet Lifestyles, LLC, 43 F.4th 1153, 1159 (11th Cir. 2022)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "If there is not sufficient evidence for a jury to find for the non-moving party, or '[i]f the evidence is merely colorable,' or if it 'is not significantly probative,' then summary judgment is appropriate." Id. (quoting Anderson, 477 U.S. at 249-50).

The movant bears the initial burden of demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." James River Ins. Co. v. Ultratec Special Effects Inc, 22 F.4th 1246, 1251 (11th Cir. 2022) (quoting Dietz v. Smithkline Beecham Corp., 598 F.3d 812, 815 (11th Cir. 2010)). In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Baxter v. Roberts, 54 F.4th 1241, 1253 (11th Cir. 2022).

The principles governing summary judgment do not change when the parties file cross-motions for summary judgment. See Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005). Cross-motions for summary judgment are to be treated separately, "view[ing] the facts 'in the light most favorable to the non-moving party on each motion.'" Cowen v. Sec'y of Ga., 22 F.4th 1227, 1231 (11th Cir. 2022) (quoting Chavez v. Mercantil Commercebank, N.A., 701 F.3d 896, 899 (11th Cir. 2012)). Ultimately, "[w]hen parties jointly move for summary judgment, the court has three options: granting summary judgment for the plaintiff under the defendant's best case, granting summary judgment for the defendant under the plaintiff's best case, or denying both motions for summary judgment and proceeding to trial." FCOA LLC v. Foremost Title & Escrow Servs. LLC, 57 F.4th 939, 959 (11th Cir. 2023).

### III. Preliminary Matters

#### A. Florida Substantive Law Applies

In diversity cases such as these, the Court generally applies the substantive law of the forum state — in this case, Florida. Ins. Co. of N. Am. v. Lexow, 937 F.2d 569, 571 (11th Cir. 1991) ("In a diversity case, a federal court applies the substantive law of the forum state, unless federal constitutional or statutory law is contrary."). "Because we are interpreting Florida law, we look first for case precedent from Florida's highest court—the Florida

Supreme Court." SE Prop. Holdings, LLC v. Welch, 65 F.4th 1335, 1342 (11th Cir. 2023) (citing Winn-Dixie Stores, Inc. v. Dolgencorp, LLC, 746 F.3d 1008, 1021 (11th Cir. 2014)). "Where that court has not spoken, however, we must predict how the highest court would decide this case." Id. (quoting Turner v. Wells, 879 F.3d 1254, 1262 (11th Cir. 2018)). "In making this prediction, 'we are bound to adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.'" Id. (cleaned up) (quoting Winn-Dixie, 746 F.3d at 1021).

None of the parties dispute that Florida substantive law governs these cases.

**B. Insurable Interest**

Under Florida law, only those with an insurable interest in the property at the time of the loss may enforce an insurance contract. Fla. Stat. § 627.405(1) ("No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.") An "insurable interest . . . . means any actual, lawful, and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction, or pecuniary damage or impairment." Fla. Stat. § 627.405(2). No party disputes that The Orchards had an insurable

interest in the condominium buildings whose roofs and gutters were damaged by Hurricane Irma.

### C. Assignment of Insurable Interest

Until recently[5], Florida courts had recognized the ability to transfer an insurable interest to another by assignment. See W. Fla. Grocery Co. v. Teutonia Fire Ins. Co., 77 So. 209, 211 (Fla. 1917). An assignment is "a contract between the assignor and the assignee." MSP Recovery Claims, Series LLC v. QBE Holdings, Inc., 965 F.3d 1210, 1218 (11th Cir. 2020) (quoting 3A Fla. Jur. 2d Assignments § 1 (2d ed. June 2020 update)). Generally, an assignment is "a transfer or setting over of property, or of some right or interest therein, from one person to another." Cont'l Cas. Co. v. Ryan Inc. E., 974 So. 2d 368, 376 (Fla. 2008) (quoting Assignment, Black's Law Dictionary (8th ed. 2004)).

"[O]nce transferred, the assignor no longer has a right to enforce the interest because the assignee has obtained all 'rights to the thing assigned.'" Id. (citing Price v. RLI Ins. Co., 914 So.2d 1010, 1013-14 (Fla. 5th DCA 2005)). "Thus, once the interest has been assigned, 'the insured has no standing to bring an action against the insurer.'" Sidiq v. Tower Hill Select Ins. Co., 276 So. 3d 822, 825 (Fla. 4th DCA 2019) (quoting Progressive Exp. Ins. Co. v. McGrath Cmty. Chiropractic, 913 So. 2d 1281, 1285 (Fla. 2d

---

[5] See infra note 7.

20

DCA 2005)).  It is the assignee of post-loss insurance benefits who can sue the insurer to obtain such benefits.  <u>Nationwide Mut. Fire Ins. Co. v. Pinnacle Med., Inc.</u>, <u>753 So. 2d 55, 57</u> (Fla. 2000) ("The right of an assignee to sue for breach of contract to enforce assigned rights predates the Florida Constitution.")  The assignment, however, must be valid.  <u>Gables Ins. Recovery, Inc. v. Citizens Prop. Ins. Corp.</u>, <u>261 So. 3d 613, 618</u> (Fla. 3d DCA 2018) ("If the assignments were not valid, then as a non-party to the insurance contracts[, the assignee] would have no right to sue."); <u>QBE Specialty Ins. Co. v. United Reconstruction Grp., Inc.</u>, <u>325 So. 3d 57, 60</u> (Fla. 4th DCA 2021)("In other words, a third-party's ability to bring suit against an insurance company is predicated on it having received a valid assignment of benefits from the insured.").

### D. Contract Documents to be Considered

The determination of the validity of an assignment requires the Court to first determine which documents constitute the contract.  The Addendum was executed on April 30, 2018, while the parties executed the other two documents on April 12, 2018. From this, CMR asserts that "[t]he AOB stands on its own" (<u>Doc. #157, p. 21</u>, ¶78), and both CMR and Empire assert the AOB is a single document that constitutes a binding contract without relying on any other document.  (<u>Doc. #194, pp. 1-2</u>.)  The Orchards posits "that the AOB, [the Roofing A]greement, and Addendum must be read

together as the scope of one is dependent upon the scope of the other." (Doc. #173, p. 17.) The Court determines that the Roofing Agreement, the AOB, and the Addendum are construed together as the contract to determine the validity and enforceability of the assignment.

Courts must "give effect to the intent of the parties in accord with reason and probability as gleaned from the whole agreement and its purpose." Arthur Rutenberg Corp. v. Pasin, 506 So.2d 33, 34 (Fla. 4th DCA 1987); see also Thompson v. Shell Petroleum Corp., 178 So. 413, 415 (Fla. 1938) ("We are of the opinion that we should consider the whole transaction in its entirety and look at each instrument in view of the other, and thus we will be aided in the construction and interpretation of the instruments.").

"Under Florida's 'contemporaneous instrument rule,' two [or more] separately executed documents may be 'construed together as a single contract' when the documents were 'executed by the same parties, at or near the same time, and concerning the same subject matter.'" MSP Recovery Claims, Series LLC v. QBE Holdings, Inc., 965 F.3d 1210, 1218 (11th Cir. 2020) (quoting Life Care Ponte Vedra, 162 So. 3d at 190 n.2). "This court has held that a complete contract may be gathered from [multiple documents] between the parties relating to the subject-matter of the contract, and so connected with each other that they may be fairly said to

constitute one paper." Webster Lumber Co. v. Lincoln, 115 So. 498, 502 (Fla. 1927) (collecting cases). "[T]he intention of the parties is the governing principle" and "we look to the terms of the [documents] to determine whether [the parties] intended to make one contract or two [or more] separate contracts." In re Gardinier, Inc., 831 F.2d 974, 976 (11th Cir. 1987) (applying Florida law).

The AOB and the Roofing Agreement were both executed by the same parties on the same day and concern the same subject matter. The Court finds that they should be construed together, as the parties clearly intended.

The Addendum, containing more detailed "specifications" for the work, was also executed by the same parties and concerns the same subject matter. While the Addendum is undated, the parties agree that it was executed on or about April 30, 2018, about 2-1/2 weeks after the original two documents. The Florida contemporaneous instrument rule applies since the subject matter overlap is substantial. J. M. Montgomery Roofing Co., 98 So. 2d at 486; Williams v. Atl. Sugar Ass'n, Inc., 773 So. 2d 1176, 1178 (Fla. 4th DCA 2000) ("The instruments may be interpreted together even if entered into on different days, as long as they contain the same subject matter."); Shelby Homes at Millstone, Inc. v. DaSilva, 983 So. 2d 786, 788 (Fla. 4th DCA 2008)("If the two

documents concern the same subject matter, they may be interpreted together, even if entered into on different days.")

Additionally, the Addendum is construed together with the AOB and the Roofing Agreement under Florida's incorporation by reference doctrine. "[W]here a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing." U.S. Rubber Prod. v. Clark, 200 So. 385, 388 (Fla. 1941). "Incorporation by reference is a recognized method of making one document of any kind become a part of another separate document without actually copying it at length in the other." Avatar Properties, Inc. v. Greetham, 27 So. 3d 764, 766 (Fla. 2nd DCA 2010) (quoting State v. Wade, 544 So. 2d 1028, 1030 (Fla. 2d DCA 1989)). No specific words or phrases are required. Rather, "[i]t is sufficient if the general language . . . reveals an intent to be bound by" the other document. Jenkins v. Eckerd Corp., 913 So. 2d 43, 51 (Fla. 1st DCA 2005) (quoting Management Computer Controls, Inc. v. Charles Perry Construction, Inc., 743 So. 2d 627, 631 (Fla. 1st DCA 1999)). Although it refers to the wrong date, the Addendum states that it "shall modify and be in addition

to that certain contract between CMR and The Orchards Condominium Association, Inc., dated: 04/30/2018." (Doc. #53-3, p. 2.)[6]

The Court finds the parties intended all three documents to be construed together as their agreement.  Accordingly, the Court will consider all three documents in determining the validity, enforceability, and meaning of the AOB.

### IV.   Subject Matter Jurisdiction

Before addressing the merits, the Court begins, as it must, with resolution of CMR's assertion that the Court lacks subject matter jurisdiction because The Orchards' Complaint does not allege an "actual controversy" as required by the Declaratory Judgment Act and Article III, sec. 2 of the United States Constitution.  CMR argues that the Complaint does not allege any uncertainty but is simply seeking a declaration that it properly revoked the AOB.  Such a request, CMR argues, "is not within the ambit of the Declaratory Judgment Act [which] allows parties to clarify their rights *before* they act," but not when the party has already acted and seeks a declaration that the action was proper. (Doc. #171, p. 18.)  The Orchards responds that it has "allege[d] an actual controversy within its Complaint." (Doc. #175, p. 7.)

---

[6] As The Orchards points out, "[n]o documents between the parties are dated April 30, 2018." (Doc. #168, p. 22.)  The date in the Addendum was clearly a scrivener's error.

Procedurally, the Court will construe this portion of CMR's argument as a motion to dismiss under Rule 12(b)(1).  See Kennedy v. Floridian Hotel, Inc., 998 F.3d 1221, 1228 (11th Cir. 2021); Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1182 (11th Cir. 2007); Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla., 382 F.3d 1276, 1278 (11th Cir. 2004).  CMR's argument is a facial attack on subject matter jurisdiction since it is based on the allegations in the complaint. Gardner v. Mutz, 962 F.3d 1329, 1340 (11th Cir. 2020). "In adjudicating a facial attack, 'the district court takes the allegations as true in deciding whether to grant the motion.' . . ." Id. (internal citations omitted).

As an initial matter, the Court notes that The Orchards did not bring its declaratory judgment action under federal law, but under Fla. Stat. § 86.021.  See Case No. 2:20-cv-564, Doc. #3, ¶ 8.  The Florida Declaratory Judgment Act requires:

> a bona fide, actual, present practical need for the declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interest are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded

> from curiosity. These elements are necessary in order to maintain the status of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts.

Santa Rosa Cnty. v. Admin. Com'n, Div. of Admin. Hearings, 661 So. 2d 1190, 1192-93 (Fla. 1995) (citations omitted).

Federal principles are similar. "Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of 'Cases' and 'Controversies.'" Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1216 (11th Cir. 2000) (quoting U.S. Const. art. III, § 2). A declaratory judgment action allows a federal district court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126 (2007) (quoting 28 U.S.C. § 2201(a)). Thus, "[i]n all cases arising under the Declaratory Judgment Act, the threshold question is whether a justiciable controversy exists." Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995) (internal citations omitted) (citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 272 (1941)). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

issuance of a declaratory judgment." GTE Directories Pub. Corp. v. Trimen Am., Inc., 67 F.3d 1563, 1567 (11th Cir. 1995) (quoting Maryland Casualty Co., 312 U.S. at 273). Even where a justiciable controversy exists, relief under the Declaratory Judgment Act is discretionary. Wilton v. Seven Falls Co., 515 U.S. 277, 282-83 (1995) (citing Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942)).

Even applying federal principles, as the parties have done, CMR is incorrect in its broad assertion that a declaratory judgment may only be sought before conduct occurs.  It is true, however, that "when a plaintiff is seeking declaratory relief—as opposed to seeking damages for past harm—the plaintiff must allege facts from which it appears that there is a 'substantial likelihood that he will suffer injury in the future.'"  A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co., 925 F.3d 1205, 1210-11 (11th Cir. 2019) (citations omitted).

The Complaint sufficiently alleges that there is a substantial controversy between parties having ongoing adverse legal interests of sufficient immediacy and reality to warrant a declaratory judgment.  The Complaint alleges that on April 12, 2018 The Orchards signed an Assignment of Insurance Benefits to CMR; that CMR was unable to obtain a scope of work approved by Empire or any insurance proceeds from Empire; that CMR filed a lawsuit against Empire as assignee of The Orchards; that CMR is

28

not actually the assignee because the assignment was properly revoked, or alternatively is invalid or was breached by CMR. (Case No. 2:20-cv-564-FTM-29MRM, Doc. #3.)  The Orchards also filed its own breach of contract claim against Empire. (Id.)  The Orchards seeks a determination as to whether the Assignment of Benefits is a valid contract since "[t]here is a bona fide, actual, present practical need for a declaration of [The Orchards] rights and responsibilities under the Assignment of Benefits provision, absent which [The Orchards'] breach of contract claim cannot proceed on the merits." (Id., ¶¶16-17, 40-41.)  The allegations that resolution of the dispute is necessary for The Orchards' to proceed with its breach of contract claim are well-within the future injury requirement of the Declaratory Judgment Act.

Additionally, CMR's own Complaint seeks a declaratory judgment concerning the same issues and states that "[p]ursuant to the Federal Declaratory Judgment Act, 28 USC § 2201(a), the Parties have an actual controversy within the jurisdiction of this Court with respect to the interpretation, enforceability, rights, and interest pursuant to the AOB executed by CMR and The Orchards." (Doc. #16, ¶47.)  This confirms the existence of an ongoing case or controversy.

The Court finds that a case and controversy exists and has been sufficiently pled.  CMR's argument to the contrary is rejected.

## V.    Initial Validity and Enforceability of Assignment

The Court begins with The Orchards' request to declare that the AOB was never valid and enforceable because: (1) a provision of its condominium Declaration prohibited The Orchards from entering into an assignment, and (2) the AOB never satisfied the legal requirements of a valid and enforceable contract.   CMR essentially requests the polar-opposite judicial declarations, that (1) the AOB is a valid and enforceable contract which is not impacted by the Declaration, and (2) the AOB has always satisfied the requirements of a valid and enforceable contract. Alternatively, CMR argues that equitable principles bar The Orchards from asserting that the AOB was never valid and enforceable.   Empire concurs with the positions of CMR.   Because the Court finds that the assignment is valid and enforceable, it need not reach CMR's alternative arguments.

### A. The Orchards' Authority to Assign

The Orchards argues that the AOB is invalid because "no individual[,] nor The Orchards collectively[,] ha[d] the authority to assign any portion of its insurance benefits pursuant to The Orchards Declaration." (Doc. #168, p. 9.)   The clause relied upon by The Orchards reads as follows:

> 15.7  Insurance   Proceeds.   All   insurance   policies purchased by the Association shall be for the benefit of the Association, the unit owners and their mortgagees as their   interests   may   appear,   and   all   proceeds   from

policies purchased by the Association shall be payable
only to the Association.

(Doc. #16-7, p. 27.)   The offending provision of the AOB, as The
Orchards sees it, is the following sentence: "I hereby appoint CMR
as attorney-in-fact, authorizing CMR to endorse my name, and to
deposit insurance checks or drafts for CMR."   (Doc. #53-2.)

The Orchards argues that these AOB terms are "in contradiction
of the Declaration," and that "[a]s the powers of the Board – as
limited by the Declarations – did not permit this assignment of
the insurance proceeds in a manner payable directly to CMR, then
the Board and President lacked the authority to bind the
Association."   (Doc. # 168, pp. 10.)   As a result, The Orchards
contends, the AOB was void from the beginning and not enforceable.
(Id. at pp. 9-11.)

In Florida, "[a]ll contractual rights are assignable unless
the contract prohibits assignment, the contract involves
obligations of a personal nature, or public policy dictates against
assignment." Webb Roofing & Constr., LLC v. FedNat Ins. Co., 320
So. 3d 803, 805 (Fla. 2d DCA 2021).   Section 15.7 does not prohibit
an assignment.   It does not mention the word "assignment" at all,
and only requires that insurance proceeds "be payable only to the
Association."   There is no evidence in this record that payment of
any proceeds from the Policy was made payable to any entity other
than The Orchards.   The AOB sentence simply allows CMR to endorse

The Orchards' name and deposit its insurance checks but does not authorize the one thing prohibited by § 15.7 - having insurance proceeds payable to any entity other that The Orchards.  Thus, § 15.7 "falls far short of creating a contractual bar to assignment" and is significantly different than language Florida courts have found to bar assignments.  Kohl v. Blue Cross & Blue Shield of Florida, Inc., 988 So. 2d 654, 658 (Fla. 4th DCA 2008).

Additionally, even if The Orchards lacked authority to execute the AOB, the AOB would at most be voidable, not void. See Landcastle Acquisition Corp. v. Renasant Bank, 57 F.4th 1203, 1223-25 (11th Cir. 2023) ("Both state and federal courts applying state law have held an agent's lack of authority renders a contract voidable, not void.").[7]  The Orchards took no steps to avoid the AOB until May of 2020, and even then did not assert its action was based on § 15.7.  The first time The Orchards asserted that § 15.7

---

[7] The result would not be the same for other more recent insurance benefits assignments.  The Florida legislature required more recent assignment agreements to comply with certain requirements, including that an assignment agreement must "[b]e in writing and executed by and between the assignor and the assignee" and "[c]ontain a written, itemized, per-unit cost estimate of the services to be performed by the assignee." § 627.7152(2)(a)(1), (4), Fla. Stat. (2021). "An assignment agreement that does not comply with this subsection is invalid and unenforceable." § 627.7152(2)(d), Fla. Stat. (2021). But "[f]or insurance policies issued after January 1, 2023, the Florida Legislature has declared all assignments to be void, invalid, and unenforceable. § 627.7152(13), Fla. Stat. (2023)." Kidwell Group, LLC v. SafePoint Ins. Co., 4D2022-2806, 2023 WL 8792662, at n.2 (Fla. 4th DCA Dec. 20, 2023).

voided the AOB was July 6, 2020, in its Complaint (Doc. #3, ¶¶ 18-22) in The Orchards v. Empire and CMR, Case No. 2:20-cv-564-FTM-29MRM.  By this time, it was too late to make the assertion that the AOB provision was voidable.

In sum, the Court concludes that Declaration § 15.7 did not prohibit The Orchards or its then-president from agreeing to the assignment because that provision is not a restriction on the ability to make a valid assignment.  Therefore, the assignment is not invalid, unenforceable, void, or voidable because of § 15.7.[8] Rather, the assignment is a valid and enforceable part of the contract if the normal contract requirements are satisfied.

**B. Contractual Deficiencies of AOB**

The second reason The Orchards asserts the AOB was never valid and enforceable is that it never satisfied all the basic requirements for the formation of a contract.  The Orchards asserts the AOB is illusory and unenforceable because (1) its terms are so lacking, unclear and ambiguous that there was never any true agreement, and (2) the AOB was not mutually enforceable.

---

[8] Given the Court's findings, it is not necessary to make any declaration as to the alternative arguments by CMR or Empire.  CMR argues that The Orchards has "waived any purported restriction under Section 15.7, and ratified the AOB. . . ." (Doc. #171, p. 8.)  See also (Docs. ##157, pp.26-31; #171, pp. 9-11.)  Similarly, Empire argues that The Orchards is estopped by its conduct and omissions from denying the validity of the AOB as it relates to Empire.  (Doc. #174, pp. 24-26.)  As to these issues, there is no case or controversy allowing a declaratory judgment.

Accordingly, The Orchards asserts that the AOB does not satisfy two of the basic requirements of an enforceable contract - consideration and sufficient specification of terms so that the obligations can be ascertained.  (Doc. #168, pp. 21-25.)

CMR counters that this general contract proposition is inapposite to this AOB. (Doc. #171, p. 20.) CMR argues that "[t]he sole issue being considered is whether the AOB is valid, which requires the Court to concentrate on the intent of the parties to assign and transfer the benefits for consideration. Nothing more." (Id. at p. 21.)

As the Court has found earlier, the documents to be construed together as the contract are the Roofing Agreement, the AOB, and the Addendum.  In Florida, a valid contract requires "(1) offer; (2) acceptance; (3) consideration, (4) and sufficient specification of essential terms." Kolodziej v. Mason, 774 F.3d 736, 741 (11th Cir. 2014)(quoting Vega v. T-Mobile USA, Inc., 564 F.3d 1256, 1272 (11th Cir. 2009)). The Orchards asserts that the last two elements were never present.  (See Doc. #168, pp. 21-25.)

**(1)   Lack of Consideration**

The Orchards argues that the AOB is not enforceable "as it lacks true consideration as an illusory contract." (Doc. #168, p. 25.) This is so, The Orchards argues, because CMR asserts that The Orchards has no means of enforcing the AOB.  (Id.)  CMR responds that "there is no issue of mutuality of contract which would make

the contract unenforceable as there is adequate and sufficient consideration." (Doc. #171, pp. 29-30.)

Florida courts have said that "[a]ny words or transactions which show an intention on the one side to assign, and an intention on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment." Brown v. Omega Ins. Co., 322 So. 3d 98, 101 (Fla. 4th DCA 2021) (quoting McClure v. Century Ests., Inc., 120 So. 4, 9 (Fla. 1928)). "It is basic hornbook law that a contract which is not mutually enforceable is an illusory contract." Pan-Am Tobacco Corp. v. Dep't of Corr., 471 So. 2d 4, 5 (Fla. 1984) (citing Howard Cole & Co. v. Williams, 157 Fla. 851, 27 So. 2d 352 (Fla. 1946). A contract is not mutually enforceable "when one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, 'I will if I want to.'" Handi-Van, Inc. v. Broward Cnty., 116 So. 3d 530, 540 (Fla. 4th DCA 2013) (quoting Princeton Homes, Inc. v. Virone, 612 F.3d 1324, 1331 (11th Cir. 2010). The Florida Supreme Court has said, however, that "the frequent statement of the rule of mutuality . . . is open to so many exceptions that it is of little value as a rule." Vance v. Roberts, 118 So. 205, 207 (Fla. 1928) (quoting 2 Pomeroy's Equitable Remedies, § 769).

"'[T]he so-called requirement of mutuality of obligation is now widely discredited. It is consideration . . . that is

necessary, not mutuality of obligation.'" Murry v. Zynyx Mktg. Commc'ns, Inc._, 774 So.2d 714, 715 n. 2 (Fla. 3d DCA 2000) (alteration in original) (citation omitted). "Consideration is essential; mutuality of obligation is not unless the want of mutuality would leave one party without a valid or available consideration for his promise." Wright & Seaton, Inc. v. Prescott, 420 So. 2d 623, 626 (Fla. 4th DCA 1982). "The requisite mutuality of obligation entails consideration on both sides." Palm Lake Partners II, LLC v. C & C Powerline, Inc., 38 So. 3d 844, 852 n. 10 (Fla. 1st DCA 2010).

"Consideration simply 'is the inducement to a contract.'" Koung v. Giordano, 346 So. 3d 108, 115 (Fla. 1st DCA 2022) (quoting Tampa N. R. Co. v. City of Tampa, 140 So. 311, 312 (Fla. 1932). "[T]o constitute a valid consideration there must be a benefit to the promisor or a detriment to the promisee." Mangus v. Present, 135 So. 2d 417, 418 (Fla. 1961). "It is sufficient if he does something that he is not legally bound to do." Id. (quoting Henderson v. Kendrick, 89 So. 635, 637 (Fla. 1921)). Thus, "[a] promise, no matter how slight, can constitute sufficient consideration so long as a party agrees to do something that they are not bound to do." DiMauro v. Martin, 359 So. 3d 3, 7-8 (Fla. 4th DCA 2023) (quoting Diaz v. Rood, 851 So. 2d 843, 846 (Fla. 2d DCA 2003)). "If either of those promises is illusory or unenforceable then there is no consideration for the other

promise." <u>Allington Towers N., Inc. v. Rubin</u>, <u>400 So. 2d 86, 87</u> (Fla. 4th DCA 1981).

Here, The Orchards promised to assign rights and benefits under the Policy to CMR. In return, CMR promised to perform roofing and gutter work approved by Empire. The Orchards was under no prior obligation to assign its insurance benefits, and CMR was under no prior obligation to perform roofing and gutter work. Valid consideration is present for both parties.

The Orchards fails to identify anything which makes CMR's promise illusory or unenforceable. Rather, The Orchards simply points to CMR's argument that The Orchards' only recourse for CMR's failure to secure insurance benefits from Empire is to continue to move forward with CMR. According to The Orchards, this means the AOB is not mutually enforceable and is therefore illusory and invalid. (<u>Doc. #168, p. 25</u>.)

The fact that a party can come up with an argument does not render a contract ambiguous or unenforceable. This is particularly so when the argument is simply wrong. If CMR indeed refused or was unable to execute its obligations under the AOB, there is at least an opportunity to rescind the agreement. E.g., <u>Savage v. Horne</u>, <u>31 So. 2d 477, 482</u> (Fla. 1947).

The Court finds that the parties exchanged non-illusory promises as consideration for their agreement. Therefore, the

agreement, including the AOB, is not invalid for want of consideration or lack of mutual enforceability.

### (2)  Lack of Sufficient Specification of Essential Terms

The Orchards also argues that no contract was ever formed because there was no agreement on essential terms. As The Orchards puts it: "The absence of these essential terms precludes the formation of any true agreement between the parties and prevents CMR from enforcing same." (Doc. #168, p. 24.)

"[W]hen contracting parties do not agree on an essential provision there is no 'meeting of the minds' that is the essence of a contract. . . ." Certified Motors, LLC v. Aventine Hill, LLC, 369 So. 3d 1254, 1257 (Fla. 2d DCA 2023) (alteration in original) (quoting Edgewater Enters., Inc. v. Holler, 426 So. 2d 980, 982 (Fla. 5th DCA 1982). As with any other contract, an assignment "cannot stand if it is missing the essential terms of an agreement." Davis v. Hearthstone Senior Cmtys., Inc., 155 So. 3d 1232, 1234 (Fla. 2d DCA 2015) (quoting Greenbrook NH, LLC v. Est. of Sayre, 150 So. 3d 878, 878 (Fla. 2d DCA 2014)). "The definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis." Nichols v. Hartford Ins. Co. of the Midwest, 834 So. 2d 217, 219 (Fla. 1st DCA 2002).

The Roofing Agreement (Doc. #53-3, p. 1) itself clearly lacks the necessary essential terms since all the construction

specifications are either blank or marked "TBD", including the price. Innkeepers Int'l, Inc. v. McCoy Motels, Ltd., 324 So. 2d 676, 678 (Fla. 4th DCA 1975) ("As a general rule, presence of blanks in a contract is fatal to the enforcement if the blanks occur in a provision dealing with an essential term of the contract."). The "Agreement" portion of the AOB continued to be insufficient. It simply provided that The Orchards

> authorize to [sic] Assignee to enter my property, furnish materials, supply all equipment and perform all labor necessary to preserve and protect my property from further damage and perform the following work:
>
> ☐   Emergency Roof Leak Mitigation/Cleanup
> ☒   Roofing & Gutters
> ☐   Re-screening of Pool Enclosures

(Doc. #53-2.) The subsequent Addendum, however, provides the needed sufficiency. The Addendum calls for the "[t]otal removal of [the] existing roof system," allows for the "install[ation of] multiple tile types" as long as the "material [is] accepted for use in Florida," using "tile adhesive and stainless steel screws," among many other things. (Doc. #53-3, p. 2.) The price is also addressed by the Addendum, setting the "[m]aximum expense to [The Orchards] . . . to insurance deductibles for all 30 roofs" and makes clear there would be "[n]o up front expense for [The Orchards]." (Id.) While no fixed price is ever agreed upon, this is not necessary to the formation of a contract. See Payne v. Humana Hosp. Orange Park, 661 So. 2d 1239, 1241 (Fla. 1st DCA

1995)(" When a contract fails to fix a price furthermore, a reasonable price is implied."); McGill v. Cockrell, 88 Fla. 54, 58, 101 So. 199, 201 (Fla. 1924) (where a contract fixes no definite sum to be paid for services, "a reasonable sum is presumed by law to have been contemplated by the parties"). The Court finds that by April 30, 2018, the essential terms were sufficiently described within the three documents which constitute the agreement of the parties.

In sum, the Court finds that the agreement, including the assignment provision, was supported by sufficient consideration by both parties and that by April 30, 2018, the essential terms of the agreement were set forth by the parties. Accordingly, The Orchards is not entitled to a declaratory judgment that the assignment was invalid and unenforceable, and CMR is entitled to a declaratory judgment that the assignment was valid and enforceable.

## VI.  Scope of Assignment

While the Court rejects The Orchards' assertion that there was never a valid and enforceable agreement or assignment, that does not end the matter. The Orchards asserts that even a valid and enforceable assignment does not give CMR standing to sue Empire because the assignment of insurance proceeds was limited to work actually performed by CMR and "CMR did not perform the work contemplated in the AOB." (Doc. #168, pp. 11-12, 16.) Therefore,

The Orchards argues, even a valid and enforceable assignment would not transfer any insurance proceeds to CMR in this case.

CMR asserts that "[t]he AOB is an unqualified, complete, and a whole assignment of any and all insurance rights, benefit and proceeds under the subject Policy related to the Claim" which does not "require[] work to be actually performed before CMR is entitled to any benefits." (Doc. #171, pp. 7, 14-15.) If actual work is required, CMR asserts that it has performed such work under the agreement. (Id. at p. 15.) Empire agrees with CMR. (See Doc. #174, pp. 19-21.) The Court agrees with The Orchards.

Florida recognizes that "[a]n assignment of benefits can be tailored to the work that a contractor performs." Salyer v. Tower Hill Select Ins. Co., 367 So. 3d 551, 554 (Fla. 5th DCA 2023) (citing Brown, 322 So. 3d 98; Sidiq, 276 So. 3d 822; and Nicon Constr., Inc. v. Homeowners Choice Prop. & Cas. Ins. Co., 249 So. 3d 681 (Fla. 2d DCA 2018)). "These cases show that an assignment of benefits to a third-party contractor does not foreclose a homeowner's standing to sue his or her insurer when the assignment is limited to work the contractor performs, and the contractor performs either a specific category of work (Sidiq) or no work at all (Brown)" Id. at 555. "The question . . . is the scope of that assignment." Sidiq, 276 So. 3d at 825. The scope of the assignment is determined by the intent of the parties. Id. at 827; Nicon, 249 So. 3d at 682.

### A. Relevant Contract Provisions

A clause in the Roofing Agreement captioned "Subject to Insurance Approval" states:

> Terms for Insurance Work Only: This agreement does not obligate the Property Owner or CMR unless it is approved by your Insurance Company and accepted by CMR. By signing the Agreement, you authorize CMR to pursue your best interests at a price agreeable to your Insurance Company and CMR, without any cost to you except for your insurance deductible for the work scope approved by your Insurance Company, provided you have full replacement cost coverage. Supplemental claims billed by CMR on your behalf and approved by your Insurance Company for additional work or cost increases will become part of this agreement. Any upgrades or additional work requested by you and not approved by your Insurance Company will be your financial responsibility. By signing this Agreement, Property Owner acknowledges CMR Construction & Roofing as a General Contractor and as such will be entitled to 10% Overhead & 10% Profit as allowed by Insurance Industry standards.

(Doc. #53-3, p. 1.)

The "Agreement" portion of the AOB provided that The Orchards

> authorize to [sic] Assignee to enter my property, furnish materials, supply all equipment and perform all labor necessary to preserve and protect my property from further damage and perform the following work:
>
> ☐   Emergency Roof Leak Mitigation/Cleanup
> ☒   Roofing & Gutters
> ☐   Re-screening of Pool Enclosures

(Doc. #53-2.)   The AOB then provides, under the caption of **"ASSIGNMENT OF INSSURANCE BENEFITS"**:

Assignor hereby assigns any and all insurance rights, benefits, and proceeds under any applicable insurance policies to CMR Construction & Roofing, LLC. I make this assignment and authorization in consideration of CMR's agreement to perform services and supply materials and otherwise perform its obligations under this contract, including not requiring full payment at the time of service. I also hereby direct my insurance carrier(s) to release any and all information requested by CMR, its representatives(s), or its attorney to the direct purpose of obtaining actual benefits to be paid by my insurance carrier(s) for services rendered or to be rendered. In this regard, I waive my privacy rights. I agree that any portion of work, deductibles, betterment, depreciation or additional work requested by the undersigned, not covered by insurance, must be paid by the undersigned on or before its completion. I hereby appoint CMR as attorney in-fact, authorizing CMR to endorse my name, and to deposit insurance checks or drafts for CMR. Payment terms to CMR are net-10 days. Late charges of 1.5% monthly are charged to any and all unpaid balances. CMR shall be entitled to reimbursement for costs of collection (including reasonable attorney's fees and costs) of unpaid amount by Owner/Agent and for reasonable attorney's fees and costs for the breach, or enforcement, or any terms of this entire service agreement.

(Doc. #53-2.)

**B. Insurance-Covered Work Is Required**

CMR argues that the scope of the assignment includes all of The Orchards' rights under the Policy because the assignment is "unqualified" and possesses no "carve out." (Doc. #171, pp. 15-16.) The Orchards responds "it is clear that the intent of the parties was to limit the scope of the assignment to only work performed." (Doc. #168, pp. 11-12.)

Because "[a]n assignment is like any other contract . . . . [A] court interprets it in accordance with contract law." Salyer,

367 So. 3d at 554. Florida principles of contract interpretation are well settled. The Court's goal is to effectuate the intent of the parties.  The Court looks "first at the words used on the face of the contract to determine whether that contract is ambiguous." Rose v. M/V "GULF STREAM FALCON", 186 F.3d 1345, 1350 (11th Cir. 1999).  If "the contract is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract, the agreement is ambiguous." Jones v. Treasure, 984 So. 2d 634, 638 (Fla. 4th DCA 2008) (quoting Miller v. Kase, 789 So. 2d 1095 (Fla. 4th DCA 2001)). But a contract is not ambiguous simply because it requires interpretation or because a term is undefined. Key v. Allstate Ins. Co., 90 F.3d 1546, 1549 (11th Cir. 1996) (applying Florida law). An undefined term is given its plain and ordinary meaning.  State Farm Mut. Auto. Ins. Co. v. Spangler, 64 F.4th 1173, 1179 (11th Cir. 2023). Ultimately, "whether a contractual ambiguity exists is . . . a question of law which the court may resolve summarily." Int'l Bhd. of Boilermakers v. Local Lodge D111, 858 F.2d 1559, 1561 (11th Cir. 1988); see also Abis v. Tudin, D.V.M., P.A., 18 So.3d 666, 668 (Fla. 2d DCA 2009).

     If an agreement is unambiguous, the legal effect of the language is a question of law which may be decided by the court. Dear v. Q Club Hotel, LLC, 933 F.3d 1286, 1298 (11th Cir. 2019) (applying Florida law). "If there is no ambiguity, the parties are

bound by the terms of their agreement." Quillen v. Quillen, 247 So. 3d 40, 47 (Fla. 1st DCA  2018).

The Roofing Agreement clearly provided that the insurer had to approve the price and scope of CMR's work.  (Doc. #53-3, p. 3.) ("By signing the Agreement, you authorize CMR to pursue your best interests at a price agreeable to your Insurance Company and CMR, without any cost to you except for your insurance deductible for the work scope approved by your Insurance Company, provided you have full replacement cost coverage.")  The insurer also was required to approve additional bills by CMR.  (Id.) ("Supplemental claims billed by CMR on your behalf and approved by your Insurance Company for additional work or cost increases will become part of this agreement. Any upgrades or additional work requested by you and not approved by your Insurance Company will be your financial responsibility.")

The "Agreement" portion of the AOB continues the obligation to perform work: The Orchards authorized CMR to enter its "property, furnish materials, supply all equipment and perform all labor necessary to preserve and protect my property from further damage **and perform the following work: . . . ☒    Roofing    & Gutters.**" (Doc. #53-2) (emphasis added).  The Addendum (Doc. #53-3, p. 2), fleshed out the actual roofing and gutter work to be performed.

The assignment portion of the AOB states that The Orchards "assigns any and all insurance rights, benefits, and proceeds under any applicable insurance policies to CMR Construction & Roofing, LLC." (Doc. #53-2.)  CMR's consideration for this assignment is clearly stated: "I make this assignment and authorization in consideration of CMR's agreement to perform services and supply materials and otherwise perform its obligations under this contract, including not requiring full payment at the time of service." (Id.)  Thus, CMR was required not only to "perform services and supply materials," but to "otherwise perform its obligations under this contract."  The requirement to perform under the contract is echoed in a following sentence, which directs the insurer to release information to CMR for "the direct purpose of obtaining actual benefits to be paid by my insurance carrier(s) for services rendered or to be rendered." (Doc. #53-2.)

As CMR admits, "[a]t all times the Hurricane Irma Claim assigned to CMR was . . . for roof replacement." (Doc. # 171, p. 16.) Even when CMR made a new bid proposal on April 9, 2020, to remove and replace the roofs and gutters, it recognized that the proceeds were not due until approved by the insurer and the work was completed by CMR:

> **Upon settlement of the Association's claim of damages against its insurer for damages sustained during Hurricane Irma, and per the Assignment of Benefits agreement between CMR and The Orchards dated 4/12/18, the balance of**

46

> **any insurance funds approved for this Scope of Work and completed by CMR will become immediately due.  Any payments made by the Association in excess of the deductible for this Scope of Work will be refunded to the Association by CMR.**

(Id. at p. 3) (bold in original).

Florida appellate courts have interpreted the same or similar contract language in connection with assignments, finding actual work under a policy is required.  The first sentence of the AOB mimics the sentence at issue in Nicon. There, the insured executed two assignments to two different companies. Nicon, 249 So. at 682. The insurer argued the second company had no standing to sue because the assignment to the first company was unqualified. Id. Specifically, the insurer pointed to the first assignment's language assigning "any and all insurance rights, benefits, and causes of action under my property insurance policy" to the first company. Id.  CMR invokes the same sentence, but as Florida's Second District Court of Appeals stated, this sentence cannot be read in a vacuum, but instead must be considered in the context of the entire agreement and the purpose for which it was entered:

> In finding that Mr. Prager had no further interest in the claim to assign to Nicon, the trial court isolated a phrase in the assignment rather than viewing it in the context of the entire agreement. When the phrase "any and all insurance rights, benefits, and causes of action under my property insurance policy" is read in the context of the entire assignment and the purpose for which it was entered into, it is evident that [the insured] was assigning all his rights under the policy to payment for the services performed by [the first

company]—not all his rights to payment for the entire
covered claim.

Id. at 683.

In Sidiq, the assignment stated it was "for the direct purpose
of obtaining actual benefits to be paid by [insurer] for services
rendered or to be rendered." Sidiq, 276 So. 3d at 826. This
language, which is identical to the language here, "clearly
established that the scope of the assignment" was limited to
services actually performed. Id. at 826-27. As in Brown, 322 So.
3d at 102, "[t]his contract clearly contemplates work being
performed in order for the assignment to be given." Since the
assignee "performed no work under the contract," Brown held "that
this AOB did not deprive the insureds of standing to assert their
claim for breach of contract and the right to sue for damages."
Id. at 100-102. In sum,

> These cases show that an assignment of
> benefits to a third-party contractor does not
> foreclose a homeowner's standing to sue his or
> her insurer when the assignment is limited to
> work the contractor performs, and the
> contractor performs either a specific category
> of work (Sidiq) or no work at all (Brown). See
> also Nicon, 249 So. 3d at 682-83 (holding that
> a homeowner who retained two contractors—one
> for water/debris removal and one for asbestos
> remediation—did not exclusively assign his
> policy rights to either contractor: "it is
> evident that Mr. Prager was assigning all his
> rights under the policy to payment for the
> services performed by B & M Clean—not all his
> rights to payment for the entire covered
> claim").

Salyer, 367 So. 3d at 555-56.

It is clear in this case that all insurance proceeds for (1) work covered by the Policy, (2) done by CMR, (3) at the price agreed to and with the approval of Empire, were assigned to CMR. But nothing more was assigned.

### C. Insurance-Covered Work Not Performed By CMR

The issue becomes whether CMR did any work covered by the Policy. CMR says they did, while The Orchards says they did not. The record establishes that CMR did no work which was covered by the Policy.

CMR and Empire have already litigated this issue in CMR I and are bound by that decision. As discussed earlier, CMR, as the assignee of The Orchards, previously sued Empire for breach of contract, seeking full payment of the RCV from Empire. On April 1, 2020, the district court entered summary judgment in favor of Empire, finding that "Empire did not breach the policy in failing to pay the RCV because CMR did not undertake any repairs to which that policy provision applied. Nor did Empire breach the policy in failing to pay [the Actual Cash Value (ACV)] because CMR never requested payment for ACV." (Doc. #88-2, p. 4)emphasis added). In January 2021 the Eleventh Circuit affirmed the summary judgment in favor of Empire. The appellate court stated that the Policy provides that a claim for RCV would not be paid "[u]ntil the lost or damaged property is actually repaired or replaced" and "[u]nless

49

the repairs or replacement are made as soon as reasonably possible after the loss or damage." (Doc. #88-3, p. 2) (emphasis added). Thus, Empire was not obligated to pay CMR the RCV until CMR had actually made the repairs and incurred the costs of doing so. (Id.) CMR's corporate representative Stephen Soule testified by deposition that CMR did not perform roof and gutter work on the property, but only temporary repairs. (Doc. #168-12, 83; 168-15, 142; 143, 145-49; 168-13, 211.)

On April 14, 2020, CMR provided Empire with an updated scope of work estimate. (Doc. #53-4.) CMR and Empire were never able to agree on a scope of work to be performed which would be covered by the Policy, and none of this work was performed by CMR. Such covered repairs were never made by CMR, and now cannot be made by CMR because the work was done by a new contractor under a new contract.

In sum, while the assignment was a valid and enforceable one, it was limited in scope to work done by CMR under the Policy as approved by the insurer, and no such work was done by CMR. The Orchards is the proper party to sue Empire for any alleged breach of Policy claims since it has standing as to that claim and CMR does not.

**VII.**

The Court finds that the following declaration is warranted in these cases as to the assignment:

The Amended and Restated Declaration of Condominium § 15.7 did not prohibit The Orchards or its then-president from agreeing to an assignment of insurance proceeds because that provision is not a restriction on the ability to make a valid assignment. The assignment in this case, referred to as the AOB, is not invalid, unenforceable, void, or voidable because of § 15.7. Rather, the assignment is a valid and enforceable part of the contract because the contract and its assignment provision were supported by sufficient consideration by both parties and by April 30, 2018, the essential terms of the contract had been agreed-to by the parties. The scope of the assignment was limited to the insurance proceeds for work done by CMR under the Policy as approved by Empire. As it turned out, no such work was done by CMR, and cannot be done by CMR since it has been completed by a different contractor. The Orchards is the proper party to sue Empire for any alleged breach of Policy claim since it has standing as to that claim and CMR does not have standing.

Given the Court's findings, it is not necessary to make any declaration as to the alternative or additional arguments advanced by the parties. As to these issues, there is no longer a case or controversy allowing a declaratory judgment, and the court exercises its discretion and declines to address these matters in what would simply be an advisory opinion.

Accordingly, it is now

**ORDERED:**

1. The Orchards' Motion for Summary Judgment (Doc. #168) is hereby **GRANTED IN PART AND DENIED IN PART** as set forth above.

2. CMR's Motion for Summary Judgment (Doc. #157) is hereby **GRANTED IN PART AND DENIED IN PART** as set forth above.

3. Empire's Motion for Summary Judgment (Doc. #159) is hereby **GRANTED IN PART AND DENIED IN PART** as set forth above.

4. The Court declares that:

> The Amended and Restated Declaration of Condominium § 15.7 did not prohibit The Orchards or its then-president from agreeing to an assignment of insurance proceeds because that provision is not a restriction on the ability to make a valid assignment. The assignment in this case, referred to as the AOB, is not invalid, unenforceable, void, or voidable because of § 15.7. Rather, the assignment is a valid and enforceable part of the contract because the contract and its assignment provision were supported by sufficient consideration by both parties and by April 30, 2018, the essential terms of the contract had been agreed-to by the parties. The scope of the assignment was limited to the insurance proceeds for work done by CMR under the Policy as approved by Empire. As it turned out, no such work was done by CMR, and cannot be done by CMR since it has been completed by a different contractor. The Orchards is the proper party to sue Empire for any alleged breach of Policy claim since it has standing as to that claim and CMR does not have standing.
>
> Given the Court's findings, it is not necessary to make any declaration as to the alternative or additional arguments advanced

by the parties.  As to these issues, there is
no longer a case or controversy allowing a
declaratory judgment, and the court exercises
its discretion and declines to address these
matters in what would simply be an advisory
opinion.

5.  These declarations directly affect Case No. 2:20-cv-422,

Doc. #16, Counts I and II, and Case No. 2:20-cv-564, Doc.

#3, Count I. The Clerk of the Court shall withhold entry

of judgment until the remaining counts are resolved.

6. The parties shall file an amended case management report

within **twenty-one (21) days** of the date of this Opinion

and Order setting forth their proposed schedule for these

consolidated cases, including a mediation date.

7. A status conference via Zoom will be set under separate

cover before the undersigned.

**DONE AND ORDERED** at Fort Myers, Florida, this   29th   day of

January 2024.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record